E-FILED
Wednesday, 22 September, 2004  04:34:21 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN T. MASON, ) | |
| ) | |
| PLAINTIFF, ) | |
| vs. ) | No. 04-2060 |
| ) | |
| TERRY TILLIS, GARY WEBBER, ) | |
| RON SCOTT, CAPT. MARVIN, ) | |
| COUNTY OF COLES AND CITY OF ) | |
| CHARLESTON, all in their individual ) | |
| and official capacities. ) | |
| ) | |
| DEFENDANTS. ) | |

**MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO DISMISS**

Defendants Terry Tillis, Gary Weber, Ron Scott, Capt. Brian Marvin, and Coles County, by their attorneys Clifford G. Kosoff, George J. Casson, and Julie A. Bruch, respectfully submit the following memorandum of law in support of their motion to dismiss the complaint of plaintiff John T. Mason for failure to state a claim upon which relief can be granted.

**INTRODUCTION**

Plaintiff John T. Mason, appearing pro se, brought this lawsuit pursuant to 42 U.S.C. §1983, claiming that his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution had been violated during his detention in the Coles County jail. The complaint is in two counts and is directed at six defendants. All defendants are sued in both their individual and official capacities. This motion is filed on behalf of defendants Coles County, Coles County Sheriff Ron Scott, and Coles County sheriff's deputies Terry Tillis, Gary Weber and Brian Marvin.

Count I of plaintiff's complaint was dismissed by the court sua sponte in an order entered on June 14, 2004. Accordingly, the present motion is directed solely at Count II of the

complaint. Count II presents a claim that the defendants were deliberately indifferent to plaintiff's need for psychiatric care and psychotropic medication. The allegations in Count II are specifically directed at defendants Tillis and Weber.[1]

The complaint alleges that plaintiff was detained in the Coles County jail beginning on or after January 14, 2002 and that the occurrence of which he complains took place during January 2002. (Complaint, page 4) Plaintiff alleges in Count II that he had been taking psychotropic medication before his detention in the Coles County jail and that he had been under the care of a Dr. Bogard at the Sara Bush Hospital in Charleston, Illinois prior to being arrested. (Complaint, page 7, par. 25) Plaintiff allegedly had been treated for "mental disorders" since 1994; the complaint identifies several medicines that plaintiff allegedly had been taking. (Id. par. 26) Plaintiff claims that he was denied access to his psychotropic medications while in detention at the Coles County jail. (Id. par. 25) The defendants allegedly "knew or should have known that plaintiff needed medical care" and that he had been "treated by mental health whil [sic] plaintiff was detained there prior to the incident claimed herein." (Id. par. 28) Plaintiff alleges that he had written several requests to "the Coles County Jail Officials pleading to see a Psychiatrist or to be put on his medicial [sic]." (Id. par. 30) Plaintiff alleges that he was informed by Sgt. Tillis and Sgt. Webber that there was no procedure set up for inmates to see a psychiatrist or receive psychotropic medication. (Id.) Plaintiff claims that "all defendants, either directly or indirectly demonstrated Deliberate Indifference toward plaintiff's serious Medical needs." (Id., page 8, par. 31)

---

[1] Gary Weber's name is misspelled in the complaint.

In his prayer for relief, plaintiff requests compensatory damages in the amount of $250,000.00 for "Physical, Menatal Pain,* * *Mental Anguish and Duress"; and punitive damages in the amount of $25,000.00 from defendants Tillis and Weber "for their direct involvement in denying plaintiff his constitutional rights." (Id., page 9)

Plaintiff alleges that he now is in the custody of the Illinois Department of Corrections at the Danville Correctional Center and has been receiving treatment from a psychiatrist on a regular basis. (Id., pages 1, 7, par. 29) Plaintiff attaches to the complaint four documents, each of which is entitled "Psychiatrist Evaluation", dated August 13, 2002, August 27, 2002, October 1, 2002, and October 15, 2002, which purport to be prepared by a psychiatrist at the Big Muddy River Correctional Center in the Illinois Department of Corrections.[2] These documents reflect the psychiatrist's interviews of the plaintiff, his assessments, and his treatment plan for the plaintiff.

## ARGUMENT

Count II of the complaint fails to state an actionable claim against any one of the named defendants for a variety of alternative reasons. First, the allegations of Count II, coupled with the psychiatrist evaluations attached to the complaint, demonstrate that the complaint does not present any of the factual elements necessary to state a claim for denial of the mental health needs of a prisoner – a serious need for mental health care, deliberate indifference on the part of each of the individual defendants, or a resulting injury. Second, the plaintiff's claims, which allegedly arose during January 2002, are barred by the applicable two-year statute of limitations because this lawsuit was not filed until April 2002. Third, plaintiff's claims are barred by the

---

[2] The Psychiatrist Evaluations are not marked or designated as exhibits. Defendants cite the Psychiatrist Evaluations herein by date, e.g., "8/13/02 Psychiatrist Evaluation."

3

Prison Litigation Reform Act because he seeks damages for mental suffering, but fails to allege any physical injury resulting from the defendants' alleged misconduct. Fourth, the complaint does not present any of the elements necessary to state a claim against any of the defendants in his official capacity. Fifth, the complaint does not state an actionable claim against Coles County because, as a matter of Illinois law, a county has no legal responsibility for the operation of a jail or the actions of sheriff's deputies with respect to the custody and care of prisoners in the jail.

The plaintiff's claims that he was denied mental health care and/or psychotropic medication are subject to the applicable law with respect to prisoners' claims pursuant to §1983 regarding the conditions of their confinement in a correctional facility. Defendants state the applicable law at the outset of this memorandum because all of their arguments are subject to these provisions.

A.   Standard on motion to dismiss. A claim asserted in a complaint is subject to dismissal pursuant to Fed.R.Civ. Proc. 12(b)(6) for "failure to state a claim upon which relief can be granted." Although pro se complaints are subject to this standard, they are to be liberally construed and can be dismissed for failure to state a claim only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Estelle v. Gamble, 429 U.S. 97, 106 (1976). When ruling on such a motion to dismiss, the court takes the allegations in the complaint as true, viewing all facts - - as well as any inferences reasonably drawn therefrom - - in the light most favorable to the plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990). Allegations in other filings may be considered if consistent with the complaint, Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997), and attachments to the complaint are incorporated into the complaint and become part of

4

the pleading, International Mktg., Ltd. v. Archer-Daniels-Midland Co., 192 F.3d 724, 729 (7th Cir. 1999).

      B.     <u>Standards applicable to prisoners' suits pursuant to §1983</u>. In order to plead a claim under 42 U.S.C. §1983, a plaintiff must allege (1) that a defendant deprived him of a right secured by the Constitution or laws of the United States and (2) that the defendant acted under color of state law. Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir. 1996). It is essential for liability that a defendant be personally responsible for the deprivation of a constitutional or statutory right. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). In addition, the plaintiff must allege that a constitutional violation by each defendant caused him remediable injury. Walker v. Peters, 233 F.3d 494, 502 (7th Cir. 2000); Papapetropoulous v. Milwaukee Transport Services, Inc., 795 F.2d 591, 595 (7th Cir. 1986) ("a causal connection must exist between the defendant's actions and the injury resulting from the constitutional violation"); Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988) ("Although Harris experienced considerable unpleasantness, he suffered no physical harm"); Wilson v. Cook County Board of Commissioners, 878 F.Supp. 1163, 1168 (N.D. Ill. 1993). There is no constitutional tort without an injury. Niehus v. Liberio, 973 F.2d 526, 531-532 (7th Cir. 1992).

      The courts distinguish a pretrial detainee, such as plaintiff, from a convicted prisoner. After arrest and during detention prior to conviction, the rights of the pretrial detainee are derived from the due process clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Wilson v. Williams, 83 F.3d 870, 875 (7th Cir. 1996). The rights of a convicted prisoner arise from the Eighth Amendment prohibition of cruel and unusual punishment. Id. The Eighth Amendment protections are extended to pretrial detainees through the Fourteenth Amendment. Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001). The due process clause protects the pretrial detainee from any form of punishment. Bell, 441 U.S. at 535-537; Wilson, 83 F.3d at 875.

Prison conditions violate the Constitution only where they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Delaney v. DeTella, 256 F.3d 679, 683 (7th Cir. 2001). In order to establish a claim that prison conditions violate the Constitution, a prisoner's burden involves both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Delaney, 256 F.3d at 683. First, the alleged deprivation must be, objectively, sufficiently serious. Id. Only "extreme deprivations" result in the denial of "the minimal civilized measure of life's necessities." Id.; Hudson v. McMillian, 503 U.S. 1, 9 (1992). To be actionable, the conditions must result in unquestioned and serious deprivations of basic human needs, such as lack of food, clothing, shelter, or medical care. Wilson v. Seiter, 501 U.S. 294, 304 (1991); Askew v. Fairman, 880 F.Supp. 557, 561 (N.D. Ill. 1995). Second, a prison official must be shown to have been deliberately indifferent to inmate health or safety. Farmer, at 837 ("a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety"); Delaney, at 683. These requirements apply to both convicted prisoners and pretrial detainees. Mathis v. Fairman, 120 F.3d 88, 91 (7th Cir. 1997).

Medical care is one of the basic necessities which should be available to all prisoners. Wilson, 501 U.S. at 304. Pretrial detainees have the right to receive reasonable medical treatment for a serious injury or medical need. Estelle v. Gamble, 429 U.S. 97, 103-104 (1976); Chapman, 241 F.3d at 845; Murphy v. Walker, 51 F.3d 714, 717 (7th Cir. 1995). Prisoners have the right to receive adequate mental health care; mental illness is a serious medical need requiring reasonable care and treatment for a person who has been involuntarily detained. Sanville v. McCaughtry, 266 F.3d 724, 734 (7th Cir. 2001); Estate of Novack ex rel. Turbin v. County of Wood, 226 F.3d 525, 529 (7th Cir. 2000); Collignon v. Milwaukee County, 163 F.3d 982, 987, 989 (7th Cir. 1998).

6

Inadequate health care for prisoners gives rise to a constitutional violation only when a prison official has been deliberately indifferent to a serious injury or medical need. Chapman, 241 F.3d at 845; Dunigan v. Winnebago County, 165 F.3d 587, 590 (7th Cir. 1999). A pretrial detainee claiming a constitutional violation has the burden of pleading and proving both objective (serious medical need) and subjective (deliberate indifference) components to the violation. Chapman, 241 F.3d at 845; Dunigan, 165 F.3d at 590-591. Deliberate indifference itself has subjective and objective components: did the defendant know of an excessive risk to the prisoner's health and did the defendant take reasonable steps in response to that knowledge? Miller v. Neathery, 52 F.3d 634, 639 (7th Cir. 1995).

In the case of supervisory officials, such as a sheriff or jail administrator, deliberate indifference requires a showing of direct responsibility for improper conduct; the official must have caused or participated in the alleged constitutional deprivation. Moore v. State of Indiana, 999 F.2d 1125, 1129 (7th Cir. 1993). Such responsibility means that the unconstitutional conduct occurred either at the direction of the supervisory official or with his knowledge and approval. Gossmeyer v. McDonald, 128 F.3d 481, 495 (7th Cir. 1997); Gentry, 65 F.3d at 561. Thus, a plaintiff must plead facts, not mere conclusions, indicating the supervisor's personal involvement in the allegedly unconstitutional activities. Kernats v. O'Sullivan, 35 F.3d 1171, 1182 (7th Cir. 1994); Jenkins v. Velasco, 1995 WL 765315, *8 (N.D. Ill.); Perez v. Lane, 794 F.Supp. 286, 289 (C.D. Ill. 1992).

I.  **The Complaint Fails To State A Claim That Defendants Violated Plaintiff's Constitutional Right To Adequate Mental Health Care.**

   A.  The complaint demonstrates that plaintiff did not have a serious need for mental-health treatment or psychotropic medication.

The complaint fails to provide the necessary allegations that plaintiff had a serious need during his detention in the jail for mental health care and/or psychotropic medicine. Count II

7

contains the conclusory allegation that "plaintiff needed medical care", but fails to present any factual allegations to support that conclusion. There are no allegations in the complaint as to plaintiff's physical or mental condition while in the jail, no allegations as to his symptoms, no allegations of any sort which suggest a need at that time for professional intervention or treatment.

A serious medical need may exist where a medical professional has prescribed a plan of treatment for a detainee, including prescribed medication. <u>Zentmeyer</u> v. <u>Kendall County</u>, 220 F.3d 805, 810 (7th Cir. 2000); <u>Gutierrez</u>, 111 F.3d at 1373. However, the complaint does not allege the existence of a plan of treatment for the plaintiff during the period of his detention in the Coles County jail or that medication had been prescribed to be taken by him during that time period. Count II actually avoids making such allegations of need, instead providing only vague and open-ended assertions as to some time period <u>prior</u> to the plaintiff's detention in the jail on January 14, 2002: plaintiff alleges that he "<u>had been treated</u> for mental disorders <u>since 1994</u>" and that he "<u>had been taking</u>" various medications "<u>before</u> he was detained." (Complaint page 7, par. 25, 26; emphasis added)

The circumspection of the allegations in Count II is explained by the attachments to the complaint.[3] During plaintiff's interview with the Department of Corrections psychiatrist on August 13, 2002, he is reported by the psychiatrist as having stated that in 1996 he was admitted to a "psych facility" in Charleston, Illinois, explaining "I was drinking, using drugs. I was

---

[3] There are no references in the complaint to the attached Psychiatrist Evaluations. The court must infer that plaintiff included the Psychiatrist Evaluations with his complaint because of plaintiff's perception that they provided support for or additional detail with respect to allegations in the complaint relating to (a) mental health care received by plaintiff prior to his detention in the jail; (b) psychotropic medication prescribed for plaintiff prior to his detention; and/or (c) mental health treatment received by plaintiff after he was transferred from the jail to the Illinois Department of Corrections. (See, Complaint, page 7, par. 25-29)

8

goofing up. Maybe I was aggressive and violent. I was just acting up." (8/13/02 Psychiatrist Evaluation, page 1) Similarly, the psychiatrist records plaintiff as saying that he had taken "various psych medicines in the past", but " has not taken any psych medicine since March, 1998." (Id., page 2; emphasis added) The Psychiatrist Evaluation further states: "Again and again states that he is not suicidal, and he is not psycho, and he doesn't need any psych medication." (Id.; emphasis added)

It is evident from the August 13, 2002 Psychiatrist Evaluation that the reason for plaintiff's interview with the prison psychiatrist was that plaintiff did not think that he should be at the prison boot camp because of aches and pains he experienced as a result of various accidental injuries he had received over the years. (Id., pages 1, 2) Plaintiff clearly did not express to the psychiatrist any of the symptoms of mental illness:

> Does not think that his mind races. Feels that from time to time he is just anxious and hyper but has no racing of thoughts. No mood swings, not delusional. Not hallucinating. No OCD symptoms. No obsessive-negative thoughts. No panic attacks.

(Id., page 2) The prison psychiatrist did not prescribe any psychiatric medication for plaintiff as a result of his interview with the plaintiff on August 13, 2002. (Id.) The psychiatrist eventually started plaintiff on a "small amount of Risperdal" on October 1, 2002. (10/1/02 Psychiatrist Evaluation)

There is nothing in the Psychiatrist Evaluations indicating that the plaintiff was being treated by a mental health professional or taking prescribed psychotropic medication in January 2002 at the time of his detention in the Coles County jail. In fact, the only possible inference from plaintiff's statements to the prison psychiatrist that as of August 13, 2002 he was not "psycho", did not need "psych medication", and had not taken psychotropic medicine since

9

March 1998 is that the plaintiff had <u>not</u> sought or received professional psychiatric treatment for an extended period prior to his detention in the jail.

Since the Psychiatrist Evaluations were attached to the complaint by plaintiff and filed with the complaint, they are incorporated into the complaint and become part of the pleading. <u>International Marketing</u>, 192 F.3d at 729. Factual assertions in such attachments constitute judicial admissions on the part of the plaintiff. <u>Banco del Estado</u> v. <u>Navistar International Transportation Corp.</u>, 942 F.Supp. 1176, 1179 (N.D. Ill. 1996). Where the attached document contradicts allegations in the complaint, the attachment controls for the purposes of determining whether the complaint states a claim. <u>Emery</u> v. <u>American General Finance, Inc.</u>, 952 F.Supp. 602, 605 (N.D. Ill. 1997), <u>aff'd</u>. 134 F.3d 1321 (7th Cir. 1998), <u>cert</u>. <u>denied</u>, 525 U.S. 818 (1998); <u>Banco del Estado</u>, 942 F.Supp. at 1179; <u>Cremin</u> v. <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 957 F.Supp. 1460, 1463 (N.D. Ill. 1997). <u>See</u>, <u>also</u>, <u>Wright</u> v. <u>Associated Insurance Cos., Inc.</u>, 29 F.3d 1244, 1248 (7th Cir. 1994) (documents referred to in complaint which are central to plaintiff's claim may be considered by court in deciding motion to dismiss).

The plaintiff's admissions in the August 13, 2002 Psychiatrist Evaluation are inconsistent with and therefore supercede the critical allegations of Count II. Since plaintiff admitted in the attachment that "he is not psycho", "he doesn't need any psych medication", and that he "[h]as not taken any psych medicine since March of 1998", the court must disregard the allegations in Count II that

> "[Plaintiff] had been taking [psychotropic medication] before he was detained by the Coles County Sheriff's Department." (Complaint, page 7, par. 25)

> "Plaintiff had been taking Haldel and Elavil, Thorazine, Klonopin, Cogentin, Prozac, Lithium, and Depakote." (Id., par. 26)

> "Plaintiff had been treated for mental disorders since 1994." ( Id.)

> "Plaintiff needed medical care and. . .had been treated by mental health. . .prior to the incident claimed herein." ( Id., par. 28)

In the absence of such allegations and in light of plaintiff's admissions in the August 13, 2002 Psychiatrist Evaluation, it is impossible to conclude or infer that plaintiff had a serious need for mental health treatment as of January 2002, that he was under the care of a mental health professional at that time, or that the he had outstanding prescriptions for and was taking psychotropic medication at that time. Accepting the truth of the factual assertions appearing in the August 13, 2002 Psychiatrist Evaluation, it provides no support for the conclusory claim that the plaintiff had serious mental health needs, but rather demonstrates that in fact he had no need in January 2002 for mental health treatment or psychotropic medication.

>   B.   The complaint does not present the factual allegations necessary to support a claim of deliberate indifference.

In the alternative, the complaint fails to adequately plead deliberate indifference on the part of each named defendant, a necessary element of a §1983 claim, because the specific factual allegations of the complaint do not support plaintiff's conclusory claim that the defendants were deliberately indifferent to his mental health needs.

Deliberate indifference to a serious mental health need requires that the defendant know of the need - - that is, that there was an excessive risk to the prisoner's mental health - - and that the defendant failed to take reasonable steps in response to that knowledge. Miller, 52 F.3d at 639. In the factual circumstances presented by the complaint, as discussed above, plaintiff did not present a serious need for mental-health care. As a result, the necessary factual elements of deliberate indifference did not exist: the defendants could not have had knowledge of a serious

mental health need nor could they be at fault for not taking any steps in response to a nonexistent need.

In any event, in the alternative, the complaint fails to present a factual basis for pursuing a claim of deliberate indifference on the part of Sheriff Scott or Captain Marvin. Their names are not even mentioned in Count II; nowhere does plaintiff assert that they were aware of his mental health needs. Plaintiff asserts that he had made several written requests to "Jail Officials" to see a psychiatrist or be put on medication. (Complaint, page 7, par. 30) However, the complaint does not identify any "official" to whom plaintiff had submitted such a request. In addition, plaintiff suggests more than once in his complaint that he makes a distinction between "direct" deliberate indifference and "indirect" deliberate indifference, with his claim of "direct involvement" directed only at defendants Tillis and Webber. (Complaint, page 8, par. 31 and page 9) As a result, the complaint fails to plead the necessary facts indicating that Sheriff Scott or Captain Marvin, as supervisors, had any knowledge of or involvement in the alleged failure to provide plaintiff with mental health care or dispense his medication. Gossmeyer, 128 F.3d at 495; Kernats, 35 F.3d at 1182.

Put another way, the complaint fails to provide "a short and plain statement of [plaintiff's] claim" against either Sheriff Scott or Captain Marvin, as required by Federal Rule of Civil Procedure 8(a)(2). Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 168 (1993) (Rule 8 requires short and plain statement of claim that will give defendant fair notice of what plaintiff's claim is and grounds upon which it rests).

      C.      The complaint fails to allege that plaintiff suffered injury as a result of any constitutional violations.

In the alternative, the complaint fails to state a claim pursuant to §1983 because it fails to allege that a constitutional violation by any defendant caused the plaintiff injury, a necessary element of a §1983 claim. Walker, 233 F.3d at 502. The complaint contains no allegations with respect to injury, indicating that the alleged failure to provide plaintiff with mental health care and/or psychotropic medication had no consequence. In fact, the attachments to the complaint demonstrate that the plaintiff in fact suffered no harm. As of August 13, 2002, subsequent to plaintiff's detention in the jail, it had been years since plaintiff had received psychiatric treatment and/or taken psychotropic medication, yet in his interview with the prison psychiatrist, plaintiff failed to identify any adverse consequences of that lack of treatment and medication. (8/13/02 Psychiatrist Evaluation) The only reasonable inference from the contents of the August 13, 2002 Psychiatrist Evaluation is that the plaintiff had not experienced any injury as a result of not receiving psychiatric treatment or psychotropic medication for some time, including the period of his detention in the jail.

II.      Plaintiff's Claims Are Barred By The Applicable Statute of Limitations.

In the alternative, plaintiff's claims in Count II are barred because he did not file this lawsuit until April 2, 2002, more than two years after the occurrences alleged in the complaint. The statute of limitations applicable to §1983 claims arising in Illinois is two years. Ashafa v. City of Chicago, 146 F.3d 459, 461 (7th Cir. 1998); Booker v. Ward, 94 F.3d 1052, 1056 (7th Cir. 1996). Plaintiff alleges in the complaint that his claims arose in January 2002. (Complaint, page 4) However, the complaint was not filed within two years of that date. As a result, all of plaintiff's claims are time-barred.

III.    Plaintiff's Damage Claims Are Barred By His Failure To Allege Physical Injury.

In the alternative, plaintiff's request for compensatory damages for "Menatal [sic] pain, as well as the Mental Anguish and Duress he endured" (Complaint, page 9) is barred by the Prison Litigation Reform Act, 42 U.S.C. §1997e(e), because the complaint does not allege that the plaintiff suffered physical injury as a result of the defendants' claimed deliberate indifference to his mental heath needs. The pertinent subsection of the Prison Litigation Reform Act, 42 U.S.C. §1997e(e), provides as follows:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Section 1997e(e) is applicable here because the plaintiff presently is confined in a state prison and has filed a lawsuit seeking damages for mental suffering, mental anguish, and distress allegedly suffered while he was in a custody in county jail. (Complaint, pages 1, 4, 9) See, e.g., Zehner v. Trigg, 133 F.3d 459, 461 (7th Cir. 1997). Plaintiff claims in Count II that the defendants' deliberate indifference to his "mental health needs" caused him mental and emotional injury. (Complaint, pages 8, 9) However, nowhere in Count II does plaintiff allege that he suffered physical injury as a result of such deliberate indifference. As a consequence, plaintiff is precluded by §1997e(e) from bringing this lawsuit. Herman v. Holiday, 238 F.3d 660, 665-666 (5th Cir. 2001) (prisoner not entitled to recover money damages for mental and emotional stress where he alleges no physical injury); Zehner, 133 F.3d at 461. "Depression" is not a physical injury for purposes of §1997e(e). See, Herman, 238 F.3d at 665.

14

IV.     The Complaint Fails To State A Claim Against Any Defendant In His Official Capacity.

The complaint purports to sue all defendants in their individual capacities and in their official capacities. However, this distinction is made only in the complaint's caption. Nowhere does the complaint present any factual allegations providing a reason for the distinction or a basis for pursuing official-capacity claims.

A suit pursuant to §1984 against a public employee in his official capacity is in effect a suit against the public entity which employs that defendant. Monell v. New York City Department of Social Services, 473 U.S. 159, 165 (1985). Sheriff's deputies in Illinois are employees and agents of the sheriff, who is an independent constitutional officer. 55 ILCS 5/3-6008; 55 ILCS 5/3-6015; Moy v. County of Cook, 159 Ill.2d 519, 203 Ill.Dec. 776, 779 (1994). Thus, it is redundant for plaintiff to sue Deputies Tillis, Weber, and Marvin in their official capacities, while also suing their employer, Sheriff Scott, in his official capacity.

The fact that sheriff's deputies are employees of the sheriff is not in itself be a sufficient basis for §1983 liability on the part of the sheriff. A local governmental entity cannot be vicariously liable under §1983 for the constitutional torts of its agents or employees. Monell, 436 U.S. at 694. A municipal government can be liable under §1983 only where the governmental entity itself causes a constitutional violation. Id.; City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

In order to state a §1983 claim against Sheriff Scott (or one of his deputies) in his official capacity, plaintiff must establish (a) the commission of an underlying constitutional violation by an individual who was subject to the Sheriff's policies; (b) separate culpable conduct by a responsible policy-maker or administrator for the Sheriff; and (c) a direct causal link between the

15

culpable conduct by the policy-maker or administrator and the constitutional violation. Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404, 405 (1997); Perkins v. Lawson, 312 F.3d 872, 875-876 (7th Cir. 2002). There must be a direct causal link between the Sheriff's policy or custom and the constitutional deprivation, such that the policy or custom inflicts the injury. Monell, 436 U.S. at 694; City of Canton, 489 U.S. at 385. Here, the complaint fails to present any of the elements of an actionable official-capacity claim.

Since the plaintiff's official-capacity claim depends on the sufficiency of his claims against the individual defendants, the necessary precondition for official-capacity liability is not present. As stated above, in Section I, the complaint does not state a claim for violation of plaintiff's constitutional rights by any individual defendant. In the absence of an underlying constitutional violation, there is no basis for official-capacity liability under §1983. Higgins v. Correctional Medical Services, 178 F.3d 508, 513-514 (7th Cir. 1999) ("If there was no constitutional violation on the part of the individual defendants,. . .CMS' policies could not have caused one"); Hill v. Shobe, 93 F.3d 418, 422 (7th Cir. 1996).

In the alternative, the complaint fails to plead the other necessary elements of an official-capacity claim because there are no allegations even suggesting that a policy or custom of the sheriff's office was involved in the alleged constitutional violation or was a cause of a violation. Bryan County, 502 U.S. at 404, 405; Perkins, 312 F.3d at 875.

Finally, in the alternative, to the extent that the complaint seeks punitive damages from defendants Tillis and Webber in their official capacities, that prayer should be stricken. A local government entity such as the sheriff's office is immune from liability for punitive damages under §1983. Newport v. Facts Concerts, Inc. 453 U.S. 247, 271 (1981).

V.   The Complaint Does Not Present An Actionable Claim Against Coles County.

As with the official-capacity defendants, the complaint identifies Coles County as a defendant, but thereafter does not present any allegations providing a basis for a claim against the County. This is a factual deficiency in the complaint. Since the County is a public entity, a §1983 claim against it must present the same elements as an official-capacity claim against the Sheriff. The complaint does not state a §1983 claim against the County for the same reasons it does not state a claim against the Sheriff, as more fully stated, above, in Section IV.

In the alternative, the County is not even a proper defendant here since it has no legal responsibility for the operation of the jail or the actions of sheriff's deputies. Implicit in plaintiff's inclusion of the County as a defendant is the incorrect legal conclusion that a county is responsible for the operation of a county jail. Under Illinois law, a sheriff, not the county, has responsibility for the jail and prisoners confined in the jail. Brassfield v. County of Cook, 701 F.Supp. 679, 680 (N.D. Ill. 1988). The sheriff is the warden of the jail and has custody and care of the jail and of all prisoners in the jail. 55 ILCS 5/3-6017; 730 ILCS 125/2. A county has no authority or control over a sheriff or the sheriff's employees. Moy, 203 Ill. Dec at 779. All jail personnel, including the jail administrator, are employed by the sheriff, not the county. 730 ILCS 125/3. The sheriff is not an agent or employee of the county, but is an independent constitutional officer. Moy, 203 Ill. Dec. 779-780; Ill. Const. 1970, Art. VII, §4(c). As a result, a sheriff's duties with respect to the county jail are independent of and unalterable by the county. Moy, at 779; Ryan v. County of DuPage, 45 F.3d 1090, 1091 (7th Cir. 1995). If plaintiff's complaint could be said to allege the existence of unconstitutional polices at the jail, the Sheriff, rather than the County, would be the party responsible for such policies.

17

**CONCLUSION**

For the reasons stated herein, defendants Terry Tillis, Gary Weber, Ron Scott, Capt. Brian Marvin, and Coles County respectfully request that the court enter an order dismissing each of them as a defendant and dismissing with prejudice all claims made by plaintiff John T. Mason in his complaint directed at them.

Respectfully submitted,

TERRY TILLIS, GARY WEBER, RON SCOTT, CAPT. BRIAN MARVIN, and COLES COUNTY, Defendants


By: s/ George J. Casson
      One of their attorneys

Clifford G. Kosoff
George J. Casson
Julie A. Bruch
O'Halloran, Kosoff, Geitner & Cook, P.C.
650 Dundee Road, Suite 475
Northbrook, Illinois 60062
(847) 291-0200

18

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN T. MASON, | ) |
| | ) |
| PLAINTIFF, | ) |
| vs. | ) No. 04-2060 |
| | ) |
| TERRY TILLIS, GARY WEBBER, | ) |
| RON SCOTT, CAPT. MARVIN, | ) |
| COUNTY OF COLES AND CITY OF | ) |
| CHARLESTON, all in their individual | ) |
| and official capacities. | ) |
| | ) |
| DEFENDANT. | ) |

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 22, 2004, I electronically filed a Memorandum of Law in Support of Motion to Dismiss with the Clerk of court using the CM/ECF system which will send notification of such filing to the following:

    John F. Watson                                Richard F. Record, Jr.
    CRAIG & CRAIG                            CRAIG & CRAIG
    P.O. Box 689                                    P.O. Box 689
    Mattoon, IL 61938                        Mattoon, IL 61938
    jfw@craiglaw.net                          rfr@craiglaw.net

    and I hereby certify that on September 22, 2004, I mailed by United States Postal Service, the documents to the following non-registered participant:

        John T. Mason, K-96939
        Danville Correctional Center
        3820 E Main Street
        Danville, IL 61834

                                              Respectfully submitted,

                                              s/George J. Casson
                                              O'Halloran, Kosoff, Geitner & Cook, P.C.
                                              650 Dundee Road, Suite 475
                                              Northbrook, Illinois 60062
                                              (847) 291-0200
                                              gcasson@okgc.com